UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MATTHEW H.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

CASE NO. 2:22-CV-0939-GJL

ORDER ON PLAINTIFF'S
COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 2. This matter has been fully briefed. *See* Dkts. 15, 17.

After considering and reviewing the record, the Court concludes that (1) the Administrative Law Judge ("ALJ") harmfully erred by rejecting the opinion of Dr. Jan Kouzes; and (2) an award for benefits is appropriate. The Court accordingly **REVERSES** the Commissioner's final decision and **REMANDS** the case for calculation of an award of benefits.

I.      **PROCEDURAL HISTORY**

Plaintiff initially applied on March 17, 2015, for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II). Plaintiff's application was denied initially and following reconsideration. AR 173, 186, 195. Plaintiff requested a hearing and appeared and testified on March 2, 2017, before ALJ Laura Valente, who issued an unfavorable decision on June 28, 2017. AR 147. Plaintiff requested review of this decision by the Appeals Council on July 31, 2017. AR 254. The Appeals Council found that ALJ Valente relied on an exhibit which "related to someone other than the claimant," and remanded the matter back to ALJ Valente for a second hearing on July 16, 2019. AR 170. ALJ Valente again issued an unfavorable decision on August 19, 2019. AR 1284. Plaintiff requested review of the decision by the Appeals Council, which denied the request for review on January 31, 2020. AR 1307. On April 6, 2020, Plaintiff filed suit against the Commissioner in the Western District of Washington.

On April 2, 2021, Magistrate Judge David W. Christel found that ALJ Valente improperly concluded Plaintiff was not disabled and remanded for further administrative proceedings. AR 1313. Judge Christel found that ALJ Valente improperly discredited the opinion of Dr. Jan Kouzes and did not explicitly evaluate Plaintiff's need for a walker. AR 1328. On February 15, 2022, Plaintiff appeared before ALJ Glenn Meyers ("the ALJ") for a third hearing. AR 1229. On March 9, 2022, the ALJ issued a written decision concluding that Plaintiff was not disabled pursuant to the Social Security Act. AR 1229. On April 13, 2022, Plaintiff filed written exceptions with the Appeals Council, which she subsequently withdrew. Dkt. 15 at 3; AR 1226. On July 6, 2022, Plaintiff filed a Complaint in this Court seeking judicial review of the ALJ's written decision. *See* Dkt. 5. Defendant filed the sealed administrative record ("AR") regarding this matter on December 6, 2022. *See* Dkt. 10.

1

## II.    BACKGROUND

2       Plaintiff[1] was born in 1982 and was 32 years old on the alleged date of disability onset of

3   January 10, 2015. *See* AR 1234, 1246. Plaintiff's most recent job was in fast food and ended

4   around the same time after she "was fired for getting sick with bronchitis and not showing up."

5   AR 450. Plaintiff also worked as a cashier, kitchen helper/dishwasher, telephone representative,

6   and cashier checker. AR 1245-1246, 1276-1277. According to the ALJ, Plaintiff suffers from the

7   severe impairments of "degenerative disc disease; upper extremity arthritis; obesity; carpal

8   tunnel syndrome; obstructive sleep apnea; anxiety disorder; depressive disorder; personality

9   disorder; gender dysphoria; and calcaneal spurs." AR 1235. However, the ALJ found Plaintiff is

10  not disabled because she has the residual functional capacity ("RFC") to perform work with the

11  following restrictions:

12          sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is able
            to remember, understand, and carry out simple and routine instructions and tasks
13          consistent with the learning and training requirements of SVP level one and two
            jobs. She will not engage in overhead reaching. She will frequently reach at or
14          below shoulder level. She will frequently push and pull with the upper extremities
            and lower extremities. She will frequently handle and finger. She will use a walker
15          for walking only in the workplace. She will have no contact with the public. She is
            capable of working in proximity to but not in coordination with co-workers. She
16          will have occasional contact with supervisors. She will occasionally stoop. She will
            not crouch, crawl, kneel, or climb ramps, stairs, ropes, ladders, or scaffolds. She
17          will not ambulate on uneven surfaces, work at heights, work in proximity to moving
            machinery, or work in a work environment of loud noise. She will avoid
18          concentrated exposure to pulmonary irritants and vibrations.[2]

19

## III.    DISCUSSION

20      Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

21  social security benefits if the ALJ's findings are based on legal error or not supported by

22

23      [1] The AR and Plaintiff's legal submissions indicate that Plaintiff prefers the name Melody and uses she/her
    pronouns. *See* Dkt. 15 at 4; AR 1232.

24      [2] AR 1237-1238.

ORDER ON PLAINTIFF'S COMPLAINT - 3

1   substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

2   Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

3       Plaintiff raises the following issues in her opening brief: (1) whether the ALJ properly

4   evaluated the medical opinions; and (2) whether the ALJ properly assessed Plaintiff's RFC. *See*

5   Dkt. 15.

6   **A.   Assessment of Medical Opinions**

7       Plaintiff argues that the ALJ erred in assigning "little" weight to the opinions of Dr. Jan

8   Kouzes, Dr. Ayema Appe, Dr. Nina Tan, Ms. Jane Dirkse, Dr. Leslie Postovoit, and Dr. Gerald

9   Peterson. Dkt. 15 at 4-15.

10      The Ninth Circuit has held that deference is due to a treating or examining doctor's

11  opinion and that if the opinion is contradicted by another doctor's opinion, the "ALJ may only

12  reject it by providing specific and legitimate reasons that are supported by substantial evidence."

13  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).[3]  However, "even when contradicted, a

14  treating or examining physician's opinion is still owed deference and will often be 'entitled to

15  the greatest weight . . . even if it does not meet the test for controlling weight.'" *Id.* (quoting *Orn*

16  *v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). To reject such an opinion, an ALJ must "set[ ] out

17  a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his

18  interpretation thereof, and mak[e] findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.

19  1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

20      **1.   The 2015 Evaluation by Jan Kouzes, Ed.D.**

21      On behalf of the Washington State Department of Social & Health Services, Dr. Kouzes

22  conducted a psychological evaluation of Plaintiff on January 28, 2015. AR 449. The treatment

23

24  _____

[3] Because Plaintiff applied for benefits prior to March 27, 2017, this Court will proceed under the rules in
20 C.F.R. §§ 404.1527 and 416.927.

notes include Plaintiff's statements about a history of psychological and emotional trauma, social stigma due to Plaintiff being transgender, and a host of physical problems intensified by Plaintiff's work and living situation. Plaintiff reported that she needed "help getting started with disability or in finding a job in something that could possibly suit me physically," stating, "I think I would like an office role." AR 449.

Dr. Kouzes found that Plaintiff had "moderate" limitations on her ability to perform activities within a schedule, maintain regular attendance and be punctual, to adapt to changes in a routine work setting, to ask simple questions or request assistance, and to maintain appropriate behavior in a work setting. Dr. Kouzes also found "marked" limitations in Plaintiff's ability to communicate and perform effectively in a work setting, complete a normal workday and work week without interruptions from psychologically based symptoms, and to set realistic goals and plan independently. AR 452. Dr. Kouzes' notes indicate that Plaintiff had "very poor" hygiene, appeared unkempt, had a depressed affect and depressed mood, "decreased self-worth," and "helpless/hopeless" thought content. AR 453. The notes also indicate that Plaintiff maintained good eye contact, was cooperative, and exhibited normal concentration, perception, memory, fund of knowledge, and abstract thought. AR 453-454.

### 2. Prior Remand to Reconcile ALJ Denial with Dr. Kouzes' Evaluation

The District Court already discussed Dr. Kouzes' opinion at length when reversing ALJ Valente's decision in April 2021. As a general matter, the District Court found that ALJ Valente "relied on her own interpretation of the mental status examination, instead of relying on the interpretation by the mental health specialist," and "did not explain adequately why her interpretation of the complicated psychological situation was more correct than that of the trained doctor in the field." AR 1318.

1    The District Court rejected ALJ Valente's conclusion that the marked limitations

2    described above were inconsistent with Dr. Kouzes' own notes. ALJ Valente reasoned that,

3    because Plaintiff "performed well on mental status testing performed by Dr. Kouzes," the

4    marked limitations were therefore "inconsistent with her own exam findings." AR 1297. The

5    District Court agreed with Plaintiff that this reasoning was unsupported. AR 1320-1321. Dr.

6    Kouzes noted that Plaintiff's appearance was unkempt, hygiene was poor, reported mood was

7    "depressed," and the affect observed was consistent with the depressed mood, each of these

8    being consistent with the limitations Dr. Kouzes found. The District Court found that ALJ

9    Valente "focused on certain categories of the mental status examination while ignoring and

10   omitting discussion of others." AR 1321. Critically, the limitations assessed by Dr. Kouzes

11   focused on Plaintiff's ability to communicate in a work setting, complete a workday and

12   workweek without interruptions from symptoms, and plan independently. "The ALJ did not

13   explain how an ability to perform acceptably in memory, concentration, and fund of knowledge

14   would contradict such limitations." AR 1322.

15       The District Court also rejected ALJ Valente's conclusion that Dr. Kouzes' opinion was

16   undermined because Plaintiff "reported the desire to work to Dr. Kouzes, noted that she just

17   needed something that was less physically demanding," and had a certification in business

18   administration. AR 1297. According to the District Court, "the fact that a claimant with severe

19   mental health impairments and limitations opines having the capability of performing a certain

20   type of work, does not necessarily demonstrate such capability."  AR 1325-26. Further,

21   Plaintiff's note that she had a business administration certificate and was interested in an office

22   role did not demonstrate any inconsistency with Dr. Kouzes' opinion, "especially regarding

23   social limitations." AR 1325. In other words, "a claimant for disability should not be faulted for

24

1    desiring to work and desiring to find some sort of work they can engage in . . . Desire and

2    capability are not the same." AR 1326.

3        **3.      Second ALJ Benefit Denial Following Remand**

4        When the case was sent to a new ALJ on remand, the ALJ found a more restricted RFC.

5    AR 1237. However, the ALJ again concluded that Dr. Kouzes was internally inconsistent in her

6    report. Specifically, the ALJ noted: (1) The main reason Plaintiff stopped working was due to

7    physical problems, and she stated she could perform "office work"; (2) Plaintiff could follow 3-

8    step instructions and recall 3 objects immediately and after 5 minutes, perform serial sevens,

9    spell "world" forward and backward, and repeat 7 digits forward and 4 backward; and (3) Dr.

10   Kouzes recorded that Plaintiff's judgment and insight were fair. AR 1244.

11       These are precisely the same errors that the District Court highlighted in its April 2021

12   order. To reiterate, the fact that Plaintiff demonstrated acceptable memory, concentration, or

13   fund of knowledge is not inconsistent with Dr. Kouzes' conclusions that Plaintiff had marked

14   limitations in her ability to communicate, complete a workday or workweek, or plan

15   independently. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[O]bservations of

16   cognitive functioning . . . do not contradict [plaintiff]'s reported symptoms of depression and

17   social anxiety."); *Shannon B. C. v. Comm'r Soc. Sec. Admin.*, 6:19-cv-00843-AC, 2020 WL

18   7181585, at *10 (D. Or. Dec. 7, 2020) ("Plaintiff's insignificant mental status exams—showing

19   Plaintiff is alert, oriented, in no acute distress, and demonstrating a linear thought process—are

20   not inconsistent with PTSD, social anxiety, and depression.")

21       The ALJ also found that Dr. Kouzes' opinion was inconsistent with the record, including

22   later observations in March 2017 and 2019 about Plaintiff's good memory, insight, judgment,

23   alertness, attention, and concentration. AR 1244. For the same reasons described above, these

24

findings do not undermine Dr. Kouzes' opinion. While Plaintiff made good eye contact or was cooperative during some of her examinations (AR 1236, 1239, 1243-1244), this Court agrees with Plaintiff that reliance on this fact is improper "cherry picking." Dkt. 15 at 6; *See Tim S. v. Acting Comm'r of Soc. Sec.*, No. 3:22-CV-05508-TLF, 2023 WL 2986255, at *3 (W.D. Wash. Apr. 18, 2023) ("treatment records cannot be cherry-picked; the ALJ must consider a particular record of treatment in light of the overall diagnostic record.") (citing *Ghanim*, 763 F.3d at 1164). The District Court already found error in "focus[ing] on certain categories of the mental status examination while ignoring and omitting discussion of others." AR 1321. The ALJ made the same error here.

Lastly, the ALJ found that Dr. Kouzes' opinion was inconsistent with the GAF score of 50-55 that she awarded Plaintiff. The GAF score is "a clinician's rating of an individual's overall psychological, social, and occupational functioning, on a scale of 0 to 100. A rating between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning." AR 1244 (internal citation omitted). A GAF score of 50-55 is consistent with the three marked limitations and four moderate limitations that Dr. Kouzes found. AR 452. As Plaintiff notes, "here a GAF score in the moderate range may simply reflect positive factors aside from the Plaintiff's limitations." Dkt. 15 at 7. In other words, "the GAF score was only one piece of data" that Dr. Kouzes factored into her conclusions. *See Sambrooks v. Colvin*, 566 F. App'x 506, 511 (7th Cir. 2014) (ALJ erred in relying on a single GAF score of 60 to reject treating psychiatrist's assessment of marked limitations).[4]  The District Court already remanded this matter because ALJ Valente used "her own interpretation of the mental status examination

---

[4] This Circuit has also found that "GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects." *Garrison*, 759 F.3d at 1003. "The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day." *Id.* (internal citation omitted).

1  results as rationale for failing to credit the fully trained examining psychologist's interpretation

2  of the mental status examination results (which she herself conducted)." AR 1322. In using the

3  GAF score to discredit Dr. Kouzes' conclusions, the ALJ made the same error here.

4       The Ninth Circuit has made clear that when an ALJ seeks to discredit a medical opinion,

5  he must explain why his own interpretations, rather than those of the doctors, are correct. *See*

6  *Reddick*, 157 F.3d at 725. Here, the ALJ failed to provide "specific and legitimate reasons that

7  are supported by substantial evidence" necessary to reject the opinion of Plaintiff's examining

8  physician. *Garrison*, 759 F.3d at 1012. The ALJ mistook facts as inconsistent with Dr. Kouzes'

9  opinion, including many already rejected by the District Court, and improperly "cherry picked"

10  facts (Plaintiff's eye contact and cooperation) to discount Dr. Kouzes' opinion in the face of

11  strong evidence supporting the marked limitations.

12       Thus, this Court finds that the ALJ erred when assigning Dr. Kouzes' opinion little

13  weight. This error was harmful because the RFC determination would differ if the ALJ credited

14  the opinion, especially with respect to Plaintiff's capacity to maintain a steady work schedule.

15  AR 1279–1280 (Vocational expert's statements that workers who must miss work, arrive late, or

16  leave early more than once a month are "determined not dependable and it essentially rules out

17  competitive employment.").

18  **B.    Remedy**

19       Plaintiff argues that this Court should remand for an award of benefits, because, "after

20  three hearings, the Defendant Agency's ALJs have failed to provide an adequate basis for

21  limiting the weight assigned opinions which support a finding of disability." Dkt. 15 at 18. This

22  Court agrees.

23

24

1    "The decision whether to remand a case for additional evidence, or simply to award

2    benefits[,] is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

3    1987). If an ALJ makes an error and the record is uncertain and ambiguous, the court should

4    remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir.

5    2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors,

6    it should remand the case for further consideration. *Revels*, 874 F.3d at 668. The proper course is

7    generally to remand for further administrative proceedings "except in rare circumstances."

8    *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Remanding for a

9    direct award of benefits is appropriate where:

10        (1) the record has been fully developed and further administrative proceedings
          would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient
11        reasons for rejecting evidence, whether claimant testimony or medical opinion; and
          (3) if the improperly discredited evidence were credited as true, the ALJ would be
12        required to find the claimant disabled on remand.

13    *Trevizo v. Berryhill*, 871 F.3d 664, 682–83 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1020).

14    Each of these three requirements is satisfied here.

15        As to the first element, the record here is fully developed and further proceedings would

16    not be helpful. When an ALJ fails to follow a district court's instructions on remand, an award

17    for benefits may be warranted. *See Fife v. Comm'r of Soc. Sec.*, 583 F. Supp. 3d 1344, 1358

18    (W.D. Wash. 2022) (declining to provide ALJ a "mulligan" to reassess improperly evaluated

19    evidence after case had already been remanded once); *Shawn G. v. Kijakazi*, No. 3:20-CV-57-SI,

20    2021 WL 3683878, at *4 (D. Or. Aug. 19, 2021) (further proceedings would serve no useful

21    purpose where "the ALJ made precisely the same errors" as in the first decision, despite court's

22    explanation that the original evaluation was erroneous). Further, Plaintiff originally filed for

23    benefits over eight years ago and her case has been before an ALJ on three occasions and was

24

remanded twice, once by the Appeals Council and then by the District Court. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (remanding for benefits after plaintiff waited over seven years for a disability determination); *see also Garrison*, 759 F.3d at 1021–22 (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")  This Court finds that further proceedings would serve no useful purpose.[5]

The second and third elements are also satisfied. As discussed in detail above, the ALJ has not provided legitimate reasons backed by substantial evidence for rejecting the opinion of Dr. Kouzes, and crediting the opinion would significantly restrict the RFC and require a finding of disability. Accordingly, remand for an award of benefits is the appropriate remedy.

## IV.    CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** to the Commissioner for an award of benefits. The Clerk is directed to enter judgment for Plaintiff and close the case.

Dated this 2nd day of May, 2023.

Grady J. Leupold
United States Magistrate Judge

---

[5] *But See Hector M. C. v. Saul*, No. EDCV 19-00944-RAO, 2020 WL 978736, at *3 (C.D. Cal. Feb. 28, 2020) (remanding for further proceedings even though matter had been remanded twice, where there was "serious doubt" as to Plaintiff's credibility and disability "due to inconsistencies between his testimony and the medical evidence in the record.")